IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 21-cr-326 |
| v. | ) | |
| | ) | |
| DAYAKAR MALLU | ) | (18 U.S.C. § 1349; 26 U.S.C. § 7206(2); |
| | ) | 18 U.S.C. § 2) |
| | ) | |

## AMENDED INFORMATION

The United States of America charges:

### General Allegations

1. Mylan N.V. and its successor company, Viatris, Inc., (collectively referred to as "Mylan") were pharmaceutical companies headquartered in Canonsburg, Pennsylvania, within the Western District of Pennsylvania. Mylan's stock was listed on the NASDAQ stock exchange, a national securities exchange, and was registered with the United States Securities and Exchange Commission ("SEC"), an agency of the United States, pursuant to Section 12(b) of the Securities Exchange Act of 1934. Mylan and another company completed a merger in or around November 2020 to form Viatris.

2. Defendant DAYAKAR MALLU was an employee of Mylan from in or around May 2011 until in or around March 2017. From in or around August 2014 until his separation from Mylan in or around March 2017, defendant DAYAKAR MALLU was Mylan's Vice President of Global Operations Information Technology ("IT"). From at least in or around March 2017 to in or around October 2017, defendant DAYAKAR MALLU was a resident of McDonald, Pennsylvania, within the Western District of Pennsylvania.

3. Opel LLC was a computer programming company headquartered in Farmington Hills, Michigan. Although another individual was listed as the owner of Opel LLC on corporate records, defendant DAYAKAR MALLU was the true owner of Opel LLC and controlled the company's operations and business decisions.

4. CC-1 was the Chief Information Officer ("CIO") of Mylan and a resident of Upper Saint Clair, Pennsylvania, within the Western District of Pennsylvania. CC-1 was hired in or around September 2014 as Mylan's Head of IT Operations. On or about January 1, 2016, CC-1 was promoted to CIO of Mylan. At all times during CC-1's tenure as CIO of Mylan, CC-1 owed a fiduciary duty to Mylan and its shareholders. More specifically, as an officer of Mylan, CC-1 had a fiduciary duty not to disclose material, nonpublic information ("MNPI") outside of Mylan or to use Mylan's proprietary information for personal profit.

5. While employed at Mylan, defendant DAYAKAR MALLU reported to CC-1. In addition to their relationship as co-workers, defendant DAYAKAR MALLU and CC-1 talked and messaged on their cellular phones, met in person, attended family and community events together, and were partners in an outside business.

### COUNT ONE
### Conspiracy to Commit Securities Fraud
### (18 U.S.C. § 1349)

6. Paragraphs 1 through 2 and 4 through 5 of the General Allegations section of this Information are realleged and incorporated as though fully set forth herein.

7. From in or around at least September 2017 and continuing through in or around at least July 2019, in the Western District of Pennsylvania and elsewhere, defendant DAYAKAR

MALLU did knowingly and intentionally conspire and agree with CC-1 and other individuals known and unknown to knowingly execute and attempt to execute a scheme and artifice (a) to defraud any person in connection with a security of Mylan, an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78*l*), and (b) to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of securities issued by Mylan, an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78*l*), in violation of Title 18, United States Code, Section 1348.

### Purpose of the Conspiracy

8. The purpose of the conspiracy was for defendant DAYAKAR MALLU and CC-1 to unlawfully profit from securities transactions executed on the basis of MNPI that CC-1 obtained through his role as an officer of Mylan and to conceal the conspiracy.

### Manner and Means of the Conspiracy

9. In furtherance of the conspiracy and to effect its object and purpose, defendant DAYAKAR MALLU, CC-1, and their co-conspirators used the following manner and means:

   a. In or around September 2017, defendant DAYAKAR MALLU and CC-1 entered into a conspiracy to commit securities fraud. CC-1 provided defendant DAYAKAR MALLU with MNPI about forthcoming Mylan announcements relating to drug approvals by the Food and Drug Administration, Mylan's earnings results, and Mylan's merger. CC-1 provided defendant DAYAKAR MALLU with MNPI obtained in CC-1's role as an officer of Mylan and in violation of CC-1's fiduciary duty to Mylan and its shareholders. CC-1 provided defendant DAYAKAR MALLU with MNPI with the knowledge and expectation that

defendant DAYAKAR MALLU would trade Mylan's securities on the basis of this information and that defendant DAYAKAR MALLU would share any resulting trading profits with CC-1.

  b. Utilizing the information provided by CC-1, defendant DAYAKAR MALLU then traded in Mylan's securities in advance of Mylan's corporate announcements and shared a portion of the trading profits with CC-1. As a result of certain of these trades in Mylan's securities, defendant DAYAKAR MALLU realized net profits of approximately $4,271,562 from successful instances of insider trading.

  c. Defendant DAYAKAR MALLU gave, and CC-1 accepted, direct and indirect cash payments that represented a portion of defendant DAYAKAR MALLU's trading profits in Mylan's securities.

  d. Defendant DAYAKAR MALLU and CC-1 engaged in cash transactions in foreign currency, used trusted intermediaries to exchange the cash in a foreign country, and used untraceable methods of communication to conceal the illegal nature of, and profits from, their conspiracy.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO
**Filing False Tax Returns**
**(26 U.S.C. § 7206(2))**

10. Paragraphs 2 through 3 of the General Allegations section of this Information are realleged and incorporated as though fully set forth herein.

11. On or about February 29, 2016, defendant DAYAKAR MALLU sent information by email to Accountant 1, an accountant located in Farmington Hills, Michigan, for the preparation

of Opel LLC's 2015 corporate tax return. Defendant DAYAKAR MALLU attached a spreadsheet to the email which falsely stated that, during 2015, Opel LLC had paid $1,300,000 to a contractor, Company 2. In reality, as defendant DAYAKAR MALLU well knew, Opel LLC had not paid any money to Company 2, which was a fake company. Instead, defendant DAYAKAR MALLU caused Opel LLC to transfer $1,300,000 to his personal securities brokerage account.

12. Based upon the false information provided to him by defendant DAYAKAR MALLU, Accountant 1 prepared Opel LLC's 2015 corporate tax return on Internal Revenue Service ("IRS") Form 1120S in a manner that reported $13,034,782 in Other Deductions, including the $1,300,000 supposedly paid to Company 2, the fictitious contractor. Defendant DAYAKAR MALLU reviewed the Opel LLC 2015 corporate tax return prepared by Accountant 1 and then, on or about March 1, 2016, directed Accountant 1 to submit Opel LLC's corporate tax return to the IRS.

13. From on or about February 29, 2016 until on or about March 1, 2016, in the Western District of Pennsylvania and elsewhere, defendant DAYAKAR MALLU willfully aided and assisted in, and procured, counseled, and advised in the preparation and presentation to the IRS of a Form 1120S for Opel LLC for calendar year 2015, which was false and fraudulent as to a material matter. That Form 1120S reported on Line 19 that Opel LLC had Other Deductions of $13,034,782, whereas, as defendant DAYAKAR MALLU well knew, $1,300,000 of those deductions were false because that money was not paid to a contractor but instead was transferred to defendant DAYAKAR MALLU.

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATION

14. The United States hereby gives notice to the defendant, DAYAKAR MALLU, that, upon his conviction of Count One of this Information, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, including, but not limited to, the following:

   a. U.S. currency totaling $4,271,562 seized from TD Ameritrade account XXX-XX7520.

15. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of such defendant up to the value of the forfeitable property described in this forfeiture allegation.

| | |
|---|---|
| **JOSEPH S. BEEMSTERBOER**<br>Acting Chief, Fraud Section<br>Criminal Division<br>U.S. Department of Justice | **STUART M. GOLDBERG**<br>Acting Deputy Assistant Attorney General<br>Tax Division<br>U.S. Department of Justice |
| By: *[signature]*<br>Matthew Reilly<br>Trial Attorney<br>Fraud Section, Criminal Division<br>U.S. Department of Justice | By: /s Kenneth C. Vert<br>Kenneth C. Vert<br>Trial Attorney<br>Tax Division<br>U.S. Department of Justice |